DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Frentai Howell, has appealed from a judgment Summit County Court of Common Pleas, Juvenile Division, that terminated his parental rights to his minor child, A.W., and placed the child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.
 I {¶ 2} Howell is the natural father of A.W., born May 28, 2003. A.W.'s mother is not a party to this appeal. CSB first took custody of A.W. just days after her birth when she was released from the hospital. Although paternity had not been established at that time, CSB identified Howell, who was ten years older than A.W.'s 17-year-old mother, as the alleged father when it filed its initial complaint in this case. On July 28, 2003, Howell's paternity test results were filed with the court, which indicated that the probability of paternity was 99.998 percent.
 {¶ 3} After Howell established paternity, he indicated to the court that he wanted to be involved in his daughter's life. The next goals of his case plan were that he provide financial and emotional support for A.W., that he visit her regularly, and that he complete parenting classes. Because Howell later submitted two urine samples that both tested positive for drugs, CSB added the objective of a substance abuse assessment and regular drug screens.
 {¶ 4} On April 9, 2004, CSB moved for permanent custody of A.W. because, among other reasons, Howell had made little progress toward any of the goals of his case plan. Following a hearing on the motion, the trial court terminated parental rights and placed A.W. in the permanent custody of CSB. Howell has timely appealed, raising one assignment of error.
 II Assignment of Error
"The trial court's award of permanent custody was not supported by sufficient evidence meeting the burden of clear and convincing evidence that permanent custody should be granted instead of a first six-months extension."
 {¶ 5} Howell has asserted that the trial court erred in granting permanent custody to CSB and instead should have given him more time to comply with the requirements of his case plan. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C.2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99.
 {¶ 6} The trial court found that A.W. cannot be placed with either parent within a reasonable time or should not be placed with either parent. See R.C. 2151.414(E). R.C. 2151.414(E)(1) provides, in relevant part:
"If the court determines, by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
"(1) Following the placement of the child outside the child's home * * * the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
 {¶ 7} The following evidence established that Howell had failed to substantially remedy the conditions that caused A.W. to be placed outside the home. A.W. was removed from the home due to the problems of her mother and the absence of any legally-determined father. To develop his role as a father to A.W., Howell was required to establish paternity and then was ordered to provide financial and emotional support to A.W., to visit her regularly, and to complete parenting classes. At the time of the permanent custody hearing, thirteen months after A.W.'s birth, Howell had made very little progress toward any of these goals.
 {¶ 8} Although Howell faults CSB for his failure to make progress toward reunification, there was ample evidence presented at the hearing to demonstrate that Howell made little effort to comply with the requirements of his case plan. According to the allegations of the complaint, CSB had been attempting to make contact with Howell since before the child was born. Howell concedes that he believed he was A.W.'s father from the time of her birth, but he did not establish paternity until she was two months old.
 {¶ 9} Howell made contact with CSB about visitation in September 2003, but the agency was not able to contact him with any follow-up information for approximately two months because Howell did not provide accurate contact information. Throughout the case planning period, CSB repeatedly had problems communicating with Howell because either his address or phone number had changed, or his phone was disconnected, and Howell had failed to update the agency of his whereabouts. Howell cannot fault CSB for failing to schedule visitation when he failed to provide the agency with his current contact information.
 {¶ 10} CSB eventually scheduled visitation for the month of December 2003, but Howell failed to show up for the first two visits and the foster parents cancelled the third due to inclement weather. Howell had his first visit with A.W., who by that time was six months old, on January 2, 2004. During the next several months, the foster parents cancelled four visits and Howell failed to attend another seven visits. Although Howell called to cancel one of the visits that he missed, he simply failed to show up for the other six visits that he missed. During May 2004, Howell was incarcerated due to a domestic violence conviction and was still incarcerated at the time of the hearing. He did not have any contact with A.W. during that time.
 {¶ 11} The goal of the case plan was that Howell would maintain regular visitation with A.W. so that they could develop a father-daughter relationship. Over the entire period, however, Howell attended a total of six visits. These few visits did not likely enable Howell and A.W. to develop much of a bond.
 {¶ 12} During A.W.'s thirteen-month lifetime, Howell never provided any financial support for her except that he told the caseworker that he had purchased a dress for her. Howell also failed to attend any parenting classes, explaining that he "never really had the chance."
 {¶ 13} During February 2004, after Howell submitted two urine samples that both tested positive for illegal drugs, CSB amended his case plan to require that he obtain a drug and alcohol assessment and follow any recommendations. Howell never complied with that requirement, explaining again that he never "had the chance" to obtain an assessment or to participate in a drug treatment program. Howell also stopped submitting urine samples, despite the requirement of his case plan that he submit samples every Monday and Thursday and also submit random samples when directed. Howell offered no explanation for his failure to submit further urine samples after the two positive samples. Although he testified that he stopped using any drugs after the two positive results, that testimony was not very believable and did not explain his failure to substantiate his proclaimed abstinence by submitting urine samples.
 {¶ 14} The evidence demonstrated that, despite having approximately one year to work toward reunification with A.W., Howell had not followed through with any of the requirements of his case plan except establishing paternity. As the caseworker explained, Howell continually stated that he wanted to be reunified with A.W., but he never followed through with the necessary actions to accomplish that goal. The trial court had ample evidence before it from which it could conclude that Howell failed to substantially remedy the conditions that caused A.W. to be placed outside the home.
 {¶ 15} Next, Howell challenges the trial court's determination that permanent custody was in A.W.'s best interest. When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C.2151.414(D)(1)-(4).[1]
 {¶ 16} The evidence of Howell's interaction with A.W., as explained above, was that his only interaction with child was through six supervised visits that occurred during January through May, 2004. Although there was no evidence that Howell's interaction was inappropriate during those visits, six visits during A.W.'s entire thirteen-moth life was not sufficient to establish any type of parent-child bond.
 {¶ 17} The foster parents, on the other hand, were very bonded with A.W. and had expressed the desire to adopt her. The guardian ad litem testified that A.W. is thriving in the foster home. Both the caseworker and the guardian ad litem testified that A.W. was bonded with the entire extended foster family, including the grandparents. The foster parents plan to adopt A.W. and her older half-sibling, who is not Howell's child, who is also in CSB custody.
 {¶ 18} Because A.W. was only thirteen months old at the time of the hearing, the guardian ad litem spoke on her behalf. She testified that permanent custody to CSB was in the best interest of A.W., emphasizing Howell's lack of involvement and the foster parents' strong relationship with A.W. and their desire to adopt her.
 {¶ 19} A.W.'s custodial history, the entire thirteen months of her life, had been spent in the same foster home, where she had become bonded with the family and was doing well. During this same period, Howell had done very little to work toward reunification with his daughter. He had not even started parenting classes; he had not provided financial support to his daughter; he did not visit her regularly; and, after two positive drug screens, he did not have a substance abuse assessment, nor did he get any drug treatment or submit to any further drug screens. As the caseworker explained, Howell's actions simply did not match his stated desire to serve as a caregiver to A.W.
 {¶ 20} CSB also presented evidence that A.W. needed a legally secure permanent placement and that neither parent could provide such a placement in the near future, nor were there any suitable relatives available for placement. The foster parents had expressed the desire to adopt A.W. and her half-sibling and an adoption could only be accomplished by terminating parental rights and placing A.W. in the permanent custody of CSB.
 {¶ 21} Given the evidence before the trial court, it did not err in finding that permanent custody was in the best interest of A.W. As both prongs of the permanent custody test were satisfied, the trial court properly terminated parental rights and placed A.W. in the permanent custody of CSB. The assignment of error is overruled.
 III {¶ 22} The assignment of error is overruled and the judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, P.J., Boyle, J., concur.
[1] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case.